## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RODNEY MARTIN, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>PHARMERICA CORPORATION, FRANK E. COLLINS, W. ROBERT DAHL, JR. MARJORIE W. DORR, PATRICK G. LEPORE, GEOFFREY G. MEYERS, ROBERT A. OAKLEY, and GREGORY S. WEISHAR, )<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rodney Martin ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of PharMerica Corporation ("PharMerica" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with PharMerica, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between PharMerica and affiliates of Kohlberg Kravis Roberts & Co. L.P. ("KKR").

2.     On August 1, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $29.25 in cash for each share of PharMerica stock they own (the "Merger Consideration"),

representing $1.4 billion in total value.

3.     On September 6, 2017, in order to convince PharMerica shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.     While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning (i) the financial projections for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger and by the Company's financial advisors, UBS Securities LLC ("UBS") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"); (ii) the valuation analyses performed by the UBS and Merrill Lynch that support their respective fairness opinions; and (iii) potential conflicts of interest by PharMerica's management.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to PharMerica stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because PharMerica is incorporated in this District.

## PARTIES

11.      Plaintiff is, and at all relevant times has been, a holder of PharMerica common stock.

12.      Defendant PharMerica is incorporated in Delaware and maintains its principal

executive offices at 1901 Campus Place, Louisville, Kentucky 40299.  The Company's common stock trades on the NYSE under the ticker symbol "PMC."

13.     Individual Defendant Frank E. Collins ("Collins") has served as a director of the Company since 2007.

14.     Individual Defendant W. Robert Dahl, Jr. ("Dahl") has served as a director of the Company since 2008.

15.     Individual Defendant Marjorie W. Dorr ("Dorr") has served as a director of the Company since 2009.

16.     Individual Defendant Patrick G. LePore ("LePore") has served as a director of the Company since 2013.

17.     Individual Defendant Geoffrey G. Meyers ("Meyers") has served as a director of the Company since 2011.

18.     Individual Defendant Robert A. Oakley ("Oakley") has served as a director of the Company since 2008.

19.     Individual Defendant Gregory S. Weishar ("Weishar") has served as a director of the Company since 2007.

20.     Defendants Collins, Dahl, Dorr, LePore, Meyers, Oakley and Weishar are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of PharMerica (the "Class").  Excluded from the Class are

Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of August 29, 2017, there were approximately 31,118,849 shares of PharMerica common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of PharMerica will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

  i) whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

  ii) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

  iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

  iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the

Proposed Merger based on the materially incomplete and misleading

Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent

counsel experienced in litigation of this nature, and will fairly and adequately protect the

interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class

and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class

would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class, which would establish incompatible standards of conduct for the

party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with

respect to the matters complained of herein, thereby making appropriate the relief sought

herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and

efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.     The Proposed Merger**

23.     PharMerica is an institutional pharmacy services company that services healthcare

facilities, provides pharmacy management services to hospitals and specialty infusion services to

patients outside a hospital setting, and offers national oncology pharmacy services in the United

States. Its segments include institutional pharmacy, specialty infusion services, and specialty

oncology pharmacy.[1]

24.    On August 2, 2017, PharMerica issued a press release announcing the Proposed

Merger, which states in pertinent part:

> LOUISVILLE, KY.- PharMerica Corporation (NYSE:PMC), a national provider
> of institutional pharmacy, specialty infusion and hospital pharmacy management
> services, today announced that it has entered into a definitive merger agreement
> pursuant to which a newly formed company controlled by KKR, with Walgreens
> Boots Alliance, Inc. (Nasdaq:WBA) as a minority investor, will acquire
> PharMerica. The all-cash transaction is valued at approximately $1.4 billion
> including the assumption or repayment of debt. Upon completion of the transaction,
> PharMerica will become a private company.
>
> Under the terms of the agreement, PharMerica shareholders will receive $29.25 in
> cash for each share of PharMerica common stock upon closing of the proposed
> transaction. The price represents a premium of approximately 17 percent to
> PharMerica's closing share price as of the last trading day prior to announcement
> and a premium of approximately 18 percent to PharMerica's 90-day volume
> weighted average price. The acquisition agreement was unanimously approved by
> the Board of Directors of PharMerica.
>
> Gregory S. Weishar, PharMerica Corporation's Chief Executive Officer, said,
> "Following a thorough process and review of the Company's strategic alternatives,
> and with the assistance of our advisors, we are pleased to have reached this
> agreement. This transaction will deliver immediate and compelling value to all
> PharMerica shareholders, as well as substantial benefits to our clients and
> employees."
>
> Mr. Weishar added, "With the support of KKR and a strategic partner in Walgreens
> Boots Alliance, PharMerica will have additional resources and expertise to advance
> and grow the business. We look forward to the completion of the transaction and to
> achieving the meaningful benefits of this complementary relationship."
> "PharMerica is an innovative leader in the institutional pharmacy industry," said
> Jim Momtazee, Head of KKR's Health Care investment team. "KKR and
> Walgreens Boots Alliance are excited to partner with PharMerica's management
> and employees to build upon the company's successful foundations and accelerate
> its future growth."
>
> "This is an opportunity to expand into a growing segment, and to do so through a
> national footprint," said Alex Gourlay, Walgreens Boots Alliance co-chief

---

[1]    http://www.reuters.com/finance/stocks/company-profile/PMC.N.

operating officer. "As the healthcare landscape and patients' needs continue to change, this is another way we can support quality, affordable patient care."

KKR is making the investment primarily through its Americas XII Fund. Walgreens Boots Alliance intends to account for its minority ownership interest in PharMerica as an equity method investment.

25.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  For instance, PharMerica has reported increased sales growth year after year since fiscal year 2014.

26.     The Company's CEO, Weishar, was also optimistic about PharMerica's future performance and reported on May 10, 2017:

> We posted a great first quarter [of fiscal year 2017]; showing sequential growth in revenue and gross profit as well as growth in Adjusted EBITDA versus the first quarter of 2016. We believe we are well positioned to deliver on 2017 financial objectives.  The Company recently completed two acquisitions: CareMed Specialty Pharmacy (CareMed) and Home Care Solutions. CareMed provides comprehensive specialty pharmacy services on a national basis and Home Care Solutions expands the Company's home infusion business into the large Chicago market.  These acquisitions provide a solid start toward the Company's goal of acquiring $200 million in annualized revenues for the year.  Also, the acquisitions further bolster the progress we are making with respect to the Company's diversification strategy. We are confident we will achieve, on an annualized run rate, revenues in excess of one billion dollars by the end of the year and are quickly approaching our long-range goal of Diversified Business revenues equaling 50% of total revenues … In summary, we are pleased with this quarter's results and believe we are on track to achieving 2017 financial objectives which we are confident will drive shareholder value.

27.     In sum, it appears that PharMerica is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.        The Materially Incomplete and Misleading Proxy

28.        On September 6, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Company's Financial Projections*

29.        The Proxy disclosed five sets of financial projections: the 2015 Projections, the April 2016 Projections, the September 2016 Projections, the April 2017 Projections, and the July 2017 Projections (collectively referred to as the "projections" or the "forecasts").  However, the Proxy fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger.  Proxy, 32.  Further, the July 2017 financial projections were relied upon by the Company's financial advisors, UBS and BofA Merrill Lynch, in rendering their respective fairness opinions.  Proxy, 36, 42, 48.

30.        Specifically, the Proxy provides values for non-GAAP (generally accepted accounting principles) financial metrics Adjusted EBITDA and Adjusted Earnings Per Share ("EPS"), but fails to provide (i) the line item projections detailed below for the metrics used to calculate these non-GAAP measures, or (ii) a reconciliation of the non-GAAP projections to the most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).  Proxy, 49-51.

31.     The Proxy also fails to disclose (i) the Company's standalone, unlevered free cash flows ("UFCF") relied upon by UBS in its Discounted Cash Flow ("DCF") Analysis, and (ii) PharMerica's unlevered, after-tax free cash flows, relied upon by BofA Merrill Lynch in conducting its DCF Analysis.  Proxy, 39, 45.

**2015 Projections**

32.     With respect to the 2015 Projections, the Proxy defines Adjusted EBITDA as earnings before income, taxes, depreciation and amortization, and non-recurring expense, adjusted for stock based compensation expense, yet fails to provide the values of the underlying line items: (i) income, (ii) taxes, (iii) depreciation and amortization, (iv) non-recurring expense and (v) stock based compensation expense.  Proxy, 49.  The Proxy also fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent.

**April 2016 Projections**

33.     In the April 2016 Projections, Adjusted EBITDA is defined as earnings before income, taxes, depreciation and amortization, and non-recurring expense, adjusted for stock based compensation expense. However, the Proxy fails to provide the values of the underlying line items: (i) income, (ii) taxes, (iii) depreciation and amortization, (iv) non-recurring expense and (v) stock based compensation expense.  Proxy, 49.  The Proxy also fails to reconcile Adjusted EBITDA to its most comparable GAAP equivalent.

34.     Additionally, the Proxy discloses the projected values of Adjusted EPS and states that this metric is adjusted for non-recurring items and stock based compensation expense, however the Proxy fails to: (i) define Adjusted EPS or (ii) provide a reconciliation to its most comparable GAAP metric.  Proxy 49.

**September 2016 Projections**

35.     With respect to the September 2016 Projections, the Proxy defines Adjusted EBITDA as income, taxes, depreciation and amortization, and non-recurring expense, yet fails to (i) provide the values of the underlying line items, and (ii) reconcile the non-GAAP metric to its most comparable GAAP equivalent.  Proxy, 50.

36.     The Proxy also discloses the projected values of Adjusted EPS and states that this metric is adjusted for amortization and non-recurring items, however the Proxy fails to: (i) define Adjusted EPS, or (ii) provide a reconciliation to its most comparable GAAP metric.  Proxy 49.

**April 2017 Projections**

37.     Regarding the April 2017 Projections, the Proxy fails to (i) define Adjusted EBITDA, and (ii) reconcile the non-GAAP metric to its most comparable GAAP equivalent. Proxy, 50.

38.     Furthermore, while the Proxy defines Adjusted EPS as net income excluding the impact of intangible amortization and non-recurring expense divided by estimated fully diluted shares, the Proxy fails to provide values of the underlying line items (i) net income, (ii) intangible amortization, (iii) non-recurring expense, and (iv) estimated fully diluted shares.  Proxy, 50-51. The Proxy also fails to reconcile Adjusted EPS to its most comparable GAAP equivalent.

**July 2017 Projections**

39.     With respect to the July 2017 Projections, the Proxy fails to (i) define Adjusted EBITDA, and (ii) reconcile the non-GAAP metric to its most comparable GAAP equivalent. Proxy, 50-51.

40.     Additionally, while the Proxy defines Adjusted EPS as net income excluding the impact of intangible amortization and non-recurring expense divided by estimated fully diluted

shares, the Proxy fails to provide values of the underlying line items (i) net income, (ii) intangible amortization, (iii) non-recurring expense, and (iv) estimated fully diluted shares.  Proxy, 50-51. The Proxy also fails to reconcile Adjusted EPS to its most comparable GAAP equivalent.

41.     When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

42.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as PharMerica included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

---

[2]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*

43.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

44.     In order to make the projections for PharMerica included on pages 49 through 51 of the Proxy materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

45.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the aforementioned non-GAAP measures.   Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP projections as PharMerica stockholders are cautioned that "certain metrics included in the Projections are non-

---

*GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3]      *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[4]      *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. Securities and Exchange Commission (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measures, and the Projections do not include footnote disclosures as may be required by GAAP." Proxy, 48.

***The Financial Advisors' Valuation Analyses and Fairness Opinions***

46.     Moreover, the July 2017 Projections were relied upon by the Company's financial advisors, UBS and BofA Merrill Lynch, in connection with their respective valuation analyses and resultant fairness opinions.  Proxy, 36, 42, 48.  The opacity concerning the Company's internal projections renders the information set forth on pages 49 through 51 of the Proxy materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a proxy discloses internal projections relied upon by the board, those projections must be complete and accurate.

**UBS**

47.     With respect to UBS's Discounted Cash Flow Analysis ("DCF"), the Proxy states that UBS utilized the financial forecasts and estimates prepared by the management of PharMerica and calculated the ranges of implied present values based on the standalone, unlevered free cash flows ("UFCF") that the Company is forecasted to generate from July 1, 2017 through December 31, 2021.  Proxy, 39.  However, the Proxy fails to disclose the value of the Company's UFCF utilized in UBS's DCF analysis.  The absence of this information renders UBS's DCF Analysis incomplete and misleading.

**BofA Merrill Lynch**

48.     In conducting its DCF analysis of PharMerica, the Proxy states that BofA Merrill Lynch calculated the estimated present value of the standalone unlevered, after-tax free cash flows that the Company was forecasted to generate from the third fiscal quarter of 2017 through calendar

year 2021 based on the forecasts provided by PharMerica's management.  The absence of this information renders BofA Merrill Lynch's DCF Analysis incomplete and misleading.

49.     These key inputs are material to PharMerica shareholders, and their omission renders the summaries of both UBS's and BofA Merrill Lynch's DCF valuation analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

50.     Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- [T]he Company's future prospects, including risks related to achieving the revenue growth and profitability reflected in the Company's financial projections as a standalone company and the risks inherent in the Company's industry, including the competitive threat of consolidations and strategic transactions in the healthcare industry and the resulting changes in contract terms with pharmacy benefit managers, including potential declines in reimbursement rates.

Proxy, 32.

*Potential Conflicts of Interest by PharMerica's Management*

51.     Lastly, with respect to potential post-closing employment and retention agreements, the Proxy states the following in relevant part:

> Prior to and since the announcement of the merger, KKR and [Walgreens Boots Alliance, Inc.] have had discussions with certain executive officers of the Company regarding potential post-closing employment and retention arrangements, and may enter into definitive agreements with them regarding their employment and related compensation and benefits following the closing of the merger. No such agreements have been entered into as of the date of this proxy statement, and there can be no assurances that the terms of any such agreements will be agreed with any of these executives in the future.

52.     However, the Proxy fails to disclose the timing and nature of all communications or overtures regarding future employment and/or directorship of PharMerica's management, including who participated in such communications.  Proxy, 58.  If future employment and compensation were negotiated, even informally, prior to entering into the Merger Agreement, then such discussion(s) may have tainted the negotiation of the Proposed Merger.  Under those circumstances, the interests of PharMerica's management stand in direct conflict with the interest of the PharMerica stockholders to whom they owed fiduciary duties.  This information must be disclosed prior to the stockholder vote on the Proposed Merger, as the absence of this information renders the Proxy incomplete and misleading.

53.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from PharMerica shareholders.

54.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

57.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

58.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

61.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b).

62.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.   Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

63.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

64. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

65. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

66. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

67. PharMerica is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

68. The misrepresentations and omissions in the Proxy are material to Plaintiff and the

Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

69.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of PharMerica within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PharMerica, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

74.     In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

75.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

77.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  September 13, 2017

|  | Respectfully submitted, |
|---|---|
|  | **FARUQI & FARUQI, LLP** |
| **OF COUNSEL:** | By: _/s/ Michael Van Gorder_ |
|  | Michael Van Gorder (#6214) |
| **FARUQI & FARUQI, LLP** | 20 Montchanin Road, Suite 145 |
| Nadeem Faruqi | Wilmington, DE 19807 |
| James M. Wilson, Jr. | Tel.: (302) 482-3182 |
| 685 Third Ave., 26th Fl. | Email: mvangorder@faruqilaw.com |
| New York, NY 10017 |  |
| Tel.: (212) 983-9330 | *Counsel for Plaintiff* |
| Email: nfaruqi@faruqilaw.com |  |
| Email: jwilson@faruqilaw.com |  |

*Counsel for Plaintiff*